United States District Court
District of Rhode Island

| | |
|---|---|
| **Dana J. Adams**, | Case No. |
| Plaintiff, | |
| v. | |
| **Synchrony Bank**; **Trans Union, LLC**; **Experian Information Solutions, Inc.**; and **Equifax Information Services, LLC**, | |
| Defendants. | |

## Complaint and Jury Demand

Plaintiff Dana J. Adams brings this Complaint and Jury Demand against Defendants Synchrony Bank; Trans Union, LLC; Experian Information Solutions, Inc.; and Equifax Information Services, LLC, and states the following allegations and claims for relief:

## Parties

1. Plaintiff Dana J. Adams, resides in Wakefield, Rhode Island, which is within the district and division of this Court. Plaintiff is a consumer as defined by Section 1681a(c) of the Fair Credit Reporting Act, 15 U.S.C. 1681, *et seq*. (the "**FCRA**").[1]

---

[1] Unless otherwise specified all "**Section**" references are to the FCRA.

2. Defendant Synchrony Bank, a wholly owned subsidiary of Synchrony Financial, a publicly traded company ("**Synchrony**"), is a "furnisher" of credit information as that term is defined by the FCRA.

3. Defendant Trans Union, LLC ("**Trans Union**") is a consumer reporting agency as that term is defined by the FCRA.

4. Defendant Experian Information Solutions, Inc. ("**Experian**") is a consumer reporting agency as that term is defined by the FCRA.

5. Defendant Equifax Information Services, LLC ("**Equifax**") is a consumer reporting agency as that term is defined by the FCRA.

## Jurisdiction

5. This lawsuit is brought pursuant to the FCRA and presents a federal question. Therefore, jurisdiction arises under 28 U.S.C 1331 and 15 U.S.C 1681, *et seq.*

6. Venue is proper within this district and division pursuant to 15 U.S.C. 1681p and 28 U.S.C. 1391(b).

## Factual Allegations

### Processing of Credit Information

7. The national consumer reporting agencies (Trans Union, Equifax and Experian) (collectively, the "CRAs") regularly receive information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors and others. These

sources are known as **furnishers** within the credit reporting industry and under the FCRA.

8. Synchrony is a furnisher of credit information about Plaintiff to each of the CRAs.

9. The process by which CRAs receive, sort, and store information is largely electronic.

10. Furnishers report credit information to the consumer reporting agencies electronically on a periodic basis using an electronic format known as Metro 2.

11. The consumer reporting agencies take the credit information reported by these furnishers and create or associate consumer credit files.

12. Credit files are updated electronically by furnishers to reflect new information regarding the reported accounts (often referred to as **tradelines** within the industry).

13. When a furnisher wants to make a change to its reporting between reporting periods, a furnisher makes that change electronically using an electronic document known as an AUD or UDF (in some cases).

### Reinvestigation Procedures

14. When the CRAs receive a dispute from a consumer, the agencies investigate the dispute using an automated browser-based system called the Online

Solution for Complete and Accurate Reporting ("**e-OSCAR**"). This system was designed to provide furnishers with an online solution for processing consumer disputes.

15. Through e-OSCAR, the CRAs send to the furnisher an Automated Credit Dispute Verification ("**ACDV**") which is supposed to include: the information the agency is currently reporting about the consumer and the credit information being disputed along with all relevant information about the consumer's dispute which the agency received from the consumer.

16. Through this ACDV, the agency asks the furnisher to investigate the information in question and determine whether the information that it is reporting to the agency is correct, complete and verifiable.

17. Through the ACDV, the furnisher is asked to verify that the indicative information (i.e. information such as name, current address, prior address, social security number, date of birth and phone number) the CRA has on the consumer matches the indicative information maintained in the furnisher's records; to verify that it is associated with the particular account being disputed; and to verify the accuracy of the tradeline information.

18. The furnisher is then supposed to return the ACDV to the CRA with the updated information (if any) relating to the consumer's credit history. In responding to an ACDV, a furnisher informs the agency that: (a) either the

4

disputed information is "Verified"; (b) that the disputed information should be "Changed"; (c) or that the disputed item of information should be "Deleted". To do this the furnisher is asked to do nothing more than check a box.

19. If a furnisher chooses to verify the information it will check a box called "Verified As Reported." Once checked, this will instruct the consumer reporting agency that all information about the disputed item of information is, in fact, accurate and that no changes should be made.

20. If a furnisher chooses to change information, it will check a box called "Change Data As Shown" and then will input changes into the various fields of information that need to be changed.

21. Whenever a furnisher directs an agency to change information on a consumer's credit file, that furnisher affirms to the CRA that it has made the same changes in its own systems. This affirmation is made by the furnisher on the form used to process the dispute.

## Plaintiff's Credit Card Account

22. Synchrony furnishes consumer account information to the CRAs.

23. Plaintiff has a certain TJX Rewards®MasterCard credit card account financed through Synchrony (the "**Credit Card Account**").

24. At all times relevant, Synchrony furnished the Credit Card Account associated with the personal identifying information (i.e. information such as name, current address, prior address, social security number, date of birth and phone number) of Plaintiff.

25. At all times relevant, Synchrony furnished the Credit Card Account to the CRAs with a past due balances and negative payment histories, account statuses and payment ratings (the "**Inaccurate Derogatory Data**"). At all times relevant, Plaintiff's Credit Card Account did not have past due balances, derogatory payment histories, statuses or ratings. Accordingly the information furnished by Synchrony regarding the Credit Card Account was/is inaccurate and contained inaccuracies.

## Plaintiff's Disputes

26. Synchrony furnished and continues to furnish the Credit Card Account inaccurately to the CRAs.

27. Plaintiff disputed the accuracy of the Credit Card Account with each of the CRAs on numerous occasions.

28. Each of the CRAs received Plaintiff's disputes and forwarded those disputes to Synchrony.

29. During this time Plaintiff's credit scores suffered greatly.

30. Plaintiff has suffered adverse action (including, credit denial, delay in obtaining credit, and/or other such action) due to the inaccurately reported Credit Card Account based on consumer reports issued by the CRAs.

31. These adverse actions and others caused Plaintiff considerable emotional distress, including frustration, embarrassment and humiliation.

32. The CRAs processed Plaintiff's disputes by sending ACDVs to Synchrony.

33. Synchrony received those ACDVs and responded by improperly verifying the inaccurately reported Credit Card Account information.

34. Other than sending an ACDVs to Synchrony, the CRAs did nothing to investigate the accuracy of the Credit Card Account.

35. Plaintiff spent many hours of time disputing the inaccurate reporting with Synchrony and the CRAs.

36. Plaintiff worked very hard and deliberately for years to maintain his credit history.

37. The failures of Synchrony and the CRAs to correct this reporting has caused Plaintiff a great amount of emotional distress, has impaired his ability to obtain credit or to obtain it on favorable terms, specifically the financing of a home mortgage and other loans.

## Claim for Relief

### FCRA Violations by Synchrony

38. This is a claim for violations of the federal Fair Credit Reporting Act.

39. Synchrony furnished credit information about Plaintiff to the CRAs.

40. Synchrony is subject to the requirements of the FCRA, including those duties set out in 15 USC 1681s-2(b).

41. Synchrony on May 24, 2018 acknowledge its credit reporting error and represented to Plaintiff and the Florida Attorney General that it would correct the credit reporting error and instruct the co-defendant credit reporting agencies identified herein to "remove any derogatory information report with regard to the history of this account."

42. At all relevant times, Synchrony provided inaccurate, misleading and/or incomplete credit information to the CRAs about Plaintiff. This inaccurate, misleading and/or incomplete credit information was reported by the CRAs to Plaintiff's potential lenders and others in a position of evaluating Plaintiff's creditworthiness, credit standing, credit capacity, character and general reputation.

43. Plaintiff has notified the CRAs of his disputes of the information being reported by Synchrony. A form of Plaintiff's disputes and requests for reinvestigation were forwarded to Synchrony by the CRAs.

44. Information was available to Synchrony that should have, upon a reasonable investigation, informed Synchrony that its reporting of the Credit Card Account was inaccurate, misleading and/or incomplete.

45. Synchrony knows, should know or acts recklessly in not knowing that Plaintiff's Credit Card Account was being reported inaccurately.

46. There is no reasonable interpretation of credit reporting law that could justify Synchrony's reporting of the Credit Card Account.

47. Despite its knowledge that the information being reported to Plaintiff's credit file was inaccurate, misleading and/or incomplete, Synchrony repeatedly reported the information and repeatedly verified the information as accurate, knowing that by doing so Plaintiff's creditworthiness would be damaged.

48. Synchrony has taken actions which violate the FCRA, specifically 15 USC 1681s-2(b). These actions include, but are not limited to, the following: (a) reporting inaccurate, misleading and/or incomplete information to the consumer reporting agencies regarding the Credit Card Account; (b) failing to fully, properly or reasonably investigate Plaintiff's requests for reinvestigation; (c) failing to review all relevant information regarding Plaintiff's requests for reinvestigation and/or disregarding that information after review; (d) after receiving notice of Plaintiff's requests for reinvestigation, continuing to submit inaccurate, misleading and/or

incomplete information to the CRAs regarding the Credit Card Account; (e) failing to modify, delete or permanently block the reporting of credit information regarding Plaintiff which Synchrony knows to be inaccurate, misleading and/or incomplete; (f) failing to accurately respond to Plaintiff's requests for reinvestigation made through the CRAs after receipt of those disputes.

49. Synchrony knows that the information it provided to the CRAs was false, inaccurate, misleading and/or incomplete.

50. As a proximate result of this conduct, Plaintiff suffered actual damages including, but not limited to, economic damages resulting from credit denials, credit reduction, and/or insurance increase, the loss of credit, loss of the ability to purchase and benefit from credit, damage to credit reputation, reduction in the credit limit or credit terms from at least one other creditor, mental and emotional pain, distress, anguish, humiliation, frustration, anxiety and embarrassment.

51. The acts and/or omissions of Synchrony made in violation of the FCRA were willful, entitling Plaintiff to recover the remedies provided in 15 U.S.C. 1681n.

52. The acts and/or omissions of Synchrony made in violation of the FCRA were negligently made, entitling Plaintiff to recover the remedies provided in 15 U.S.C. 1681o.

**FCRA Violations by Trans Union**

53. Plaintiff disputed the Accounts with Trans Union and requested that Trans Union conduct reinvestigations pursuant to Section 1681i.

54. Plaintiff's requests for reinvestigation included sufficient information for Trans Union to provide actual notice that the information in dispute was inaccurate and that the sources of the disputed information were not reliable.

55. But Trans Union did not conduct any reinvestigations.

56. Instead, in response to Plaintiff's disputes, Trans Union simply parroted the inaccurate reporting it received from Synchrony and conducted no investigation of its own.

57. In response to Plaintiff's disputes, Trans Union performed no investigation at all and did not even initiate its normal reinvestigation processing procedures.

58. If Trans Union did conduct the reinvestigations requested by Plaintiff, Trans Union failed to perform reasonable investigations.

59. Trans Union knows that the FCRA does not permit it to simply parrot the information it receives from furnishers; yet this is exactly what Trans Union

does both when it initially reports information and when it *investigates* consumer disputes.

60. Even prior to Plaintiff's requests for reinvestigation, Trans Union maintained sufficient information about the Credit Card Account for Trans Union to conclude that the account was being inaccurately reported and/or that Synchrony's reporting of the account was not reliable.

61. Trans Union failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's consumer reports in violation of Section 1681e(b).

62. As a proximate result of this conduct, Plaintiff suffered actual damages including, but not limited to, economic damages resulting from credit denials, credit reduction, and/or insurance increase, the loss of credit, loss of the ability to purchase and benefit from credit, damage to credit reputation, reduction in the credit limit or credit terms from at least one other creditor, mental and emotional pain, distress, anguish, humiliation, frustration, anxiety and embarrassment.

63. Trans Union has negligently violated Section 1681e; alternatively Trans Union has willfully violated Section 1681e.

64. Trans Union has negligently violated Section 1681i; alternatively Trans Union has willfully violated Section 1681i.

65. Plaintiff suffered damages as a result of these violations for which Plaintiff is entitled to recover under Section 1681o or, alternatively, Section 1681n.

## FCRA Violations by Experian

66. Plaintiff disputed the Accounts with Experian and requested that Experian conduct reinvestigations pursuant to Section 1681i.

67. Plaintiff's requests for reinvestigation included sufficient information for Experian to provide actual notice that the information in dispute was inaccurate and that the sources of the disputed information were not reliable.

68. But Experian did not conduct any reinvestigations.

69. Instead, in response to Plaintiff's disputes, Experian simply parroted the inaccurate reporting it received from Synchrony and conducted no investigation of its own.

70. In response to Plaintiff's disputes, Experian performed no investigation at all and did not even initiate its normal reinvestigation processing procedures.

71. If Experian did conduct the reinvestigations requested by Plaintiff, Experian failed to perform reasonable investigations.

72. Experian knows that the FCRA does not permit it to simply parrot the information it receives from furnishers; yet this is exactly what Experian does both when it initially reports information and when it *investigates* consumer disputes.

73. Even prior to Plaintiff's requests for reinvestigation, Experian maintained sufficient information about the Credit Card Account for Equifax to conclude that the account was being inaccurately reported and/or that Synchrony's reporting of the account was not reliable.

74. Experian failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's consumer reports in violation of Section 1681e(b).

75. As a proximate result of this conduct, Plaintiff suffered actual damages including, but not limited to, economic damages resulting from credit denials, credit reduction, and/or insurance increase, the loss of credit, loss of the ability to purchase and benefit from credit, damage to credit reputation, reduction in the credit limit or credit terms from at least one other creditor, mental and emotional pain, distress, anguish, humiliation, frustration, anxiety and embarrassment.

76. Experian has negligently violated Section 1681e; alternatively Experian has willfully violated Section 1681e.

77. Experian has negligently violated Section 1681i; alternatively Experian has willfully violated Section 1681i.

78. Plaintiff suffered damages as a result of these violations for which Plaintiff is entitled to recover under Section 1681o or, alternatively, Section 1681n.

## FCRA Violations by Equifax

79. Plaintiff disputed the Accounts with Equifax and requested that Equifax conduct reinvestigations pursuant to Section 1681i.

80. Plaintiff's requests for reinvestigation included sufficient information for Equifax to provide actual notice that the information in dispute was inaccurate and that the sources of the disputed information were not reliable.

81. But Equifax did not conduct any reinvestigations.

82. Instead, in response to Plaintiff's disputes, Equifax simply parroted the inaccurate reporting it received from Synchrony and conducted no investigation of its own.

83. In response to Plaintiff's disputes, Equifax performed no investigation at all and did not even initiate its normal reinvestigation processing procedures.

84. If Equifax did conduct the reinvestigations requested by Plaintiff, Equifax failed to perform reasonable investigations.

85. Equifax knows that the FCRA does not permit it to simply parrot the information it receives from furnishers; yet this is exactly what Equifax does both when it initially reports information and when it *investigates* consumer disputes.

86. Even prior to Plaintiff's requests for reinvestigation, Equifax maintained sufficient information about the Credit Card Account for Equifax to conclude

that the account was being inaccurately reported and/or that Synchrony's reporting of the account was not reliable.

87. Equifax failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's consumer reports in violation of Section 1681e(b).

88. As a proximate result of this conduct, Plaintiff suffered actual damages including, but not limited to, economic damages resulting from credit denials, credit reduction, and/or insurance increase, the loss of credit, loss of the ability to purchase and benefit from credit, damage to credit reputation, reduction in the credit limit or credit terms from at least one other creditor, mental and emotional pain, distress, anguish, humiliation, frustration, anxiety and embarrassment.

89. Equifax has negligently violated Section 1681e; alternatively Equifax has willfully violated Section 1681e.

90. Equifax has negligently violated Section 1681i; alternatively Equifax has willfully violated Section 1681i.

91. Plaintiff suffered damages as a result of these violations for which Plaintiff is entitled to recover under Section 1681o or, alternatively, Section 1681n.

## Jury Demand

Plaintiffs demand trial by jury.

## Request for Relief

Plaintiff respectfully requests that this Court enter a judgments against Synchrony; Trans Union; Experian and Equifax for negligent and/or willful violations of the FCRA and award Plaintiff's actual damages, including, but not limited to, economic damages resulting from credit denials, credit reduction, and/or insurance increase, the loss of credit, loss of the ability to purchase and benefit from credit, damage to credit reputation, reduction in the credit limit or credit terms from at least one other creditor, mental and emotional pain, distress, anguish, humiliation, frustration, anxiety and embarrassment; statutory damages; punitive damages; costs and attorney's fees. Plaintiff further requests such other relief as the Court deems just and proper.

Respectfully submitted,

*/sChristopher Lefebvre M. Lefebvre, Esq. #4019*
Claude Lefebvre, Christopher Lefebvre, PC
PO Box 479 • Pawtucket • RI • 02862
Tel: (401)728-6060 • Fax (401)728-6534
chris@lefebvrelaw.com


Thomas J. Lyons, Jr., Esq.
Attorney I.D. #: 249646
CONSUMER JUSTICE CENTER, P.A.
367 Commerce Court
Vadnais Heights, MN 55127
Telephone: (651) 770-9707
Facsimile: (651) 704-0907
tommy@consumerjusticecenter.com
*Pro Hac Vice to be filed*

ATTORNEY FOR PLAINTIFFS